IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DONALD E. BEARD, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-CV-3360 |
| ) | |
| ) | |
| DR. SALEH OBAISI, ) | |
| MICHELLE MILLARD, and ) | |
| ROD BOYD, ) | |
| ) | |
| Defendants, ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff proceeds pro se from his incarceration in Menard Correctional Center. He pursues an Eighth Amendment claim under 42 U.S.C. § 1983 that Defendants were deliberately indifferent to Plaintiff's painful ankle condition during Plaintiff's incarceration in Logan Correctional Center.

Defendants move for summary judgment. After reviewing the parties' submissions, the Court concludes that summary judgment must be denied. Plaintiff's testimony regarding the pain and difficulty he suffered for an extended period of time allows a

reasonable inference of deliberate indifference.  Accordingly, this case will go to trial.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material]  fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment."  McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual

disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

FACTS

In late December 2010, during Plaintiff's incarceration in Logan Correctional Center, Plaintiff complained to medical staff about a sharp, shooting pain in Plaintiff's left ankle. According to Plaintiff, the pain was severe, causing him to limp, and interfering with his sleep. About 10 years prior, before Plaintiff's incarceration, Plaintiff had injured the same ankle while working as a welder. The prior injury had been, to Plaintiff's knowledge, successfully treated with a soft cast, steroid shots, pain medicine, and a 4-6 week lay-in from Plaintiff's welding job. The sharp, shooting pain in Plaintiff's ankle was something new.

Plaintiff saw Dr. Obaisi in January 2011. At that time, Dr. Obaisi was the Medical Director at Logan Correctional Center. Dr. Obaisi diagnosed Plaintiff with post-fracture chronic tendonitis and ordered an x-ray. The x ray showed:

> A prominent hypertrophic spurring along the insertion site of the Achilles tendon and the calcaneus with adjacent soft tissue or tendon calcifications. There is hypertrophic spurring along the plantar aspect of the calcaneus. There is hypertrophic spurring along the base of the tibia. There is no acute bony abnormality.

(Dr. Obaisi's Aff., Ex. 3, d/e 65-1, p. 9).

Dr. Obaisi told Plaintiff that the pain was caused by chronic tendonitis and post-fracture arthritis, rather than the bone spurs. According to Dr. Obaisi, bone spurs are generally asymptomatic, and, even if symptomatic do not usually require surgery. (Dr. Obaisi Aff. para. 14). Dr. Obaisi avers that surgical removal of bone spurs requires a long recovery time, does not guarantee success, and carries risks of complications and infection. Dr. Obaisi Aff. para. 15). To counter, Plaintiff offers internet articles which, though agreeing that most bone spurs are asymptomatic and require no treatment or conservative treatment, acknowledge that surgery may be appropriate if the bone spurs are causing pain and conservative treatment does not help. Dr. Obaisi prescribed Naproxen, an anti-inflammatory.

Plaintiff did not ask to see Dr. Obaisi again until July 12, 2011, a fact which Dr. Obaisi offers to show that Plaintiff's pain was not as

4

severe as Plaintiff maintains. However, during this time Plaintiff was attempting to obtain treatment through administrative channels by filing grievances and talking to his counselor. Thus, a competing inference arises that Plaintiff continued to suffer from what Plaintiff describes as severe ankle pain.

Dr. Obaisi continued to believe that the bone spurs were not the problem. In addition to the Naproxen, Dr. Obaisi prescribed steroid injections. The Naproxen did help make the pain tolerable, (Pl.'s Resp. p. 12), and the steroid injections did temporarily help with the pain (Pl's Dep. p. 36).

Plaintiff's pain continued through 2011 and into 2012, according to Plaintiff. On March 1, 2012, Dr. Obaisi discussed Plaintiff's condition with other physicians employed by Wexford Health Care, Inc., in what Dr. Obaisi calls a collegial review. According to Dr. Obaisi, the other physicians agreed with Dr. Obaisi's conservative treatment approach and suggested Plaintiff also be instructed in self-physical therapy. Dr. Obaisi prescribed self-physical therapy, ordered Plaintiff's medical records from Plaintiff's prior injury, prescribed a different kind of pain medicine, and issued a low bunk permit. (Dr. Obaisi Aff. para. 23). According

5

to Plaintiff, the self-physical therapy did not help at all. (Pl.'s Dep. p. 38).

A June 2012 medical note states that Plaintiff reported that his left ankle pain was much better. However, Plaintiff maintains that his pain remained shooting and severe throughout, though he also concedes that the Naproxsyn made the pain "tolerable." (Pl.'s Resp. p. 12, d/e 72)("severe pain and discomfort, as well as, manifested physical indication (limping) and inability to stay sleep[ing] due to pain, and that inflammatory medication was ineffective, because it only made the severe pain tolerable, basically not removing or addressing the real underlying issue (bone spurs)"). Plaintiff was able to work at a prison job during this time period.

Plaintiff avers that Dr. Obaisi promised Plaintiff in early 2012 that, if the steroid injections did not work, then Dr. Obaisi would push for an outside referral. (Pl.'s Dep. p. 36). However, according to Plaintiff, when Plaintiff told Dr. Obaisi that the steroid injections had not worked, Dr. Obaisi then declined to push for an outside referral, instead accepting the advice of other doctors in the collegial review.

In August 2012, Dr. Obaisi transferred from Logan Correctional Center to work at Stateville Correctional Center. According to Plaintiff, the new doctor at Logan Correctional Center switched Plaintiff to a stronger pain medicine, issued a heel cup, and submitted Plaintiff for approval to see a physical therapist or podiatrist. Plaintiff asserts that he was taken for an outside referral to a physical therapist in November 2012, who told Plaintiff that Plaintiff needed an MRI and to see an orthopedist. Plaintiff also asserts that the therapist determined that Plaintiff's ankle was tender, with limited range of motion, and that Plaintiff's left calf had atrophied. (Pl.'s letter to Ms. Lercher, d/e 93, p. 5). Plaintiff contends that he has been unable to get a copy of his medical records to corroborate these hearsay statements.

At some point in early 2013, Plaintiff was transferred from Logan Correctional Center to Menard Correctional Center, where Plaintiff remains. This case involves Plaintiff's treatment at Logan, not Menard.

ANALYSIS

Dr. Obaisi argues that Plaintiff's medical need was not serious because bone spurs are usually asymptomatic, and, even if symptomatic, do not usually require surgery.

However, serious, chronic, debilitating pain is a serious medical need. Gutierrez v. Peters, 111 F.3d 1364 (7th Cir. 1997)(chronic and substantial pain is a serious medical need). Plaintiff describes his pain as severe and worsening, causing him to limp and interfering with his sleep. Pain is "uniquely subjective." Hendrickson v. Cooper, 589 F.3d 887, 893 (7th Cir. 2009). On summary judgment, the Court must accept Plaintiff's own description of his pain as severe and chronic. To do otherwise would require a credibility judgment.

Though Plaintiff's need is arguably serious, finding evidence of deliberate indifference is difficult on this record. The Eighth Amendment entitles Plaintiff to adequate medical care, not to the best medical care:

> [A] prisoner is not entitled to receive "unqualified access to healthcare." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Instead, prisoners are entitled only to "adequate medical care." Johnson, 433 F.3d at 1013. "There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field."

> Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir.2008). For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. (quoting Sain v. Wood, 512 F.3d 886, 895 (7th Cir.2008)).

Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1073 (7th Cir. 2012).

Dr. Obaisi did prescribe anti-inflammatory medicine, a low bunk, an x-ray, steroid injections, and exercises. The medicine did help with the pain, as did the steroid injections, at least temporarily. Dr. Obaisi also consulted with his peer physicians, who agreed that Dr. Obaisi should continue conservative treatment. Plaintiff's argument that his bone spurs are the cause of his pain or that surgery might fix his pain is based on speculation, not on competent evidence.

On the other hand, a prison doctor cannot avoid liability by continuing to prescribe ineffective treatment and refusing to order tests or referrals needed to properly diagnose a condition. *See, e.g.,* Gonzalez v. Feinerman, 663 F.3d 311 (7th Cir. 2011)(allegations of chronic pain and difficulty functioning stated claim where doctors

9

did not alter decision to deny surgery and condition worsened); Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005)("dogged[] persist[ence] in a course of treatment known to be ineffective can be an Eight Amendment violation").

Given Plaintiff's description of his pain and difficulty functioning for nearly two years, the Court concludes that summary judgment cannot be granted to Dr. Obaisi. If Plaintiff's pain was as bad as Plaintiff describes, then arguably something more was required to at least confirm Dr. Obaisi's diagnosis of the cause of Plaintiff's pain and Dr. Obaisi's decision that surgery should not be considered. Whether Plaintiff's pain and difficulty were as bad as Plaintiff describes is a credibility judgment for the jury. Summary judgment must therefore be denied to Dr. Obaisi.

Summary judgment will also be denied for Defendants Boyd and Millard. Defendant Millard was the Director of Nursing who, in response to Plaintiff's grievance, summarized the medical care Plaintiff had received and stated that the decision whether Plaintiff would be referred to a specialist would be made by the doctor. (Pl.'s Resp. Ex. 6, d/e 72-1, p. 28). Defendant Boyd was the Director of Clinical Services who, according to Plaintiff, promised to look into

Plaintiff's problems. Laypersons are generally entitled to rely on physician's professional treatment decisions. <u>Greeno v. Daley</u>, 414 F.3d 645, 656 (7th Cir. 2005)("'If a prisoner is under the care of medical experts... a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'")(quoted cite omitted). However, Millard and Boyd do not offer their own affidavits. Without affidavits the Court cannot tell what medical training Millard and Boyd have, what their personal involvement was, if any, in overseeing Plaintiff's medical care, and what their personal knowledge was of Plaintiff's condition. <u>Berry v. Peterman</u>, 604 F.3d 435, 443 (7th Cir.2010)(nurse's deference "may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.").

IT IS ORDERED:

1. Defendant Dr. Obaisi's motion for summary judgment is denied (d/e 65).

2. The motion for summary judgment by Defendants Millard and Boyd is denied (d/e 67).

3. Defendants' motion to strike Plaintiff's response to Defendants' reply is granted (d/e 76). Plaintiff's motion to deny Defendants'

   motion to strike is denied (d/e 78).  No response to a reply is permitted under the local rules.

4. Plaintiff's motions for disclosure, which are construed as requests to admit character evidence of Dr. Obaisi at the trial, are denied (d/e's 82, 89).

5. Plaintiff's motion to compel (d/e 91) is granted to the extent Plaintiff seeks Dr. Obaisi's affidavit filed under seal, with the identity and location of the hospital redacted.  Dr. Obaisi has not adequately explained why the affidavit should remain confidential.  Plaintiff's motion to compel is also granted to the extent Plaintiff seeks a copy of his medical records, which include a referral to a physical therapist in November 2012.  **By August 19, 2013, Defendants are directed to provide Plaintiff with:  1) Dr. Obaisi's affidavit filed under seal, with the name and location of the hospital redacted; and 2) a copy of Plaintiff's medical records from October 1, 2012 through December 31, 2012, to the extent not already provided to Plaintiff.**

6. Plaintiff's motion to take judicial notice (d/e 92) appears to be a motion for a preliminary injunction to order a stop to alleged

retaliation. The motion is denied (d/e 92). This case involves Plaintiff's medical treatment at Logan Correctional Center, not any incidents at Menard. If Plaintiff is being subjected to constitutional violations in Menard Correctional Center, Plaintiff must pursue those claims in a separate lawsuit in the Southern District of Illinois.

7. Plaintiff's motion objecting to the stay of the final pretrial and trial dates until the pending motions were resolved is denied (d/e 96).

8. Plaintiff's motion to add as evidence the Administrative Board's May 2013 denial of Plaintiff's grievance regarding his bone spurs is granted (d/e 99).

9. Plaintiff motion to deny any further substitution of counsel for Defendants is denied (d/e 100).

10. Plaintiff's remaining motions are denied as moot (d/e's 93, 101, 102, 103) because this order grants the relief requested in those motions.

11. A final pretrial conference is scheduled for October 7, 2013 at 3:30 p.m.. Plaintiff shall appear by video conference. Defense counsel shall appear in person. The parties are

directed to submit an agreed, proposed final pretrial order at least seven days before the final pretrial conference.  Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference.  See CD-IL Local Rule 16.3.

12. The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference.  Nonparty witnesses who are detained or incarcerated will testify by video.  Other nonparty witnesses may appear by video at the Court's discretion.  The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought.  The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

13. The exhibit section of the proposed final pretrial order must list by number all the exhibits a party may seek to introduce at the trial and give a short description of the exhibit.

(For example, "Plaintiff's Ex. 1: 11/10/12 health care request"). The parties must prepare their own exhibits for introduction at the trial, marking the exhibits with the same number that is on the list submitted to the Court. Exhibits that are introduced at trial will be kept in the Court record. Therefore, the party offering the exhibit is responsible for making a copy of the exhibit to keep for the party's own records. Additionally, the parties are directed to exchange copies of their marked exhibits at least ten days before the final pretrial conference. If a party intends to object to the introduction of a proposed exhibit, that party must provide the Court a copy of the exhibit and an explanation of the grounds for objection at least five business days before the final pretrial conference. Objections will be argued orally at the final pretrial conference.

14. The Court will circulate proposed jury instructions, a statement of the case, and proposed voir dire questions prior to the final pretrial conference, for discussion at the final pretrial conference. Proposed additional/alternate instructions and voir dire questions must be filed five business days before the final pretrial conference. The jury instructions, statement of

the case, and voir dire questions will be finalized at the final pretrial conference, to the extent possible.

15. Motions in limine are to be filed at least five business days before the final pretrial conference, to be argued orally at the final pretrial conference.

16. The date for the jury selection and the jury trial will be determined at the final pretrial conference. In light of the Court's busy trial calendar, the parties are reminded that they may consent to a trial before Magistrate Judge Cudmore. 28 U.S.C. § 636(c)(1)(parties may consent to full time Magistrate Judge conducting "any or all proceedings in a jury or nonjury civil matter). Consent is completely voluntary: the parties are "free to withhold consent without adverse substantive consequences." 28 U.S.C. § 636(c)(3).

17. THE CLERK IS DIRECTED to issue a video writ to secure Plaintiff's appearance at the final pretrial conference.

ENTER: July 25, 2013
FOR THE COURT:

                                                s/ Sue E. Myerscough
                                                SUE E. MYERSCOUGH

UNITED STATES DISTRICT JUDGE